IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

**MAR 1 7 2009**

JOHN F. CORCORAN, CLERK
BY: _____ DEPUTY CLERK

| | | |
|---|---|---|
| POWER PARAGON, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:08CV00542 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| PRECISION TECHNOLOGY USA, INC. | ) | By:   Hon. Glen E. Conrad |
| | ) | United States District Judge |
| Defendant. | ) | |

This matter is before the court on the defendant's motion for default and for default judgment, the plaintiff's motion to set aside default, and the defendant's motion to dismiss. For the reasons set forth below, the court will deny the defendant's motion for default and for default judgment, will grant the plaintiff's motion to set aside default, and will deny in part and grant in part the defendant's motion to dismiss.

## FACTUAL AND PROCEDURAL BACKGROUND

Power Paragon, Inc. ("PPI") is a Delaware Corporation with a principal place of business in Anaheim, California. PPI is wholly owned by L-3 Communications Corporation ("L-3"). PPI is a provider of engineering, development, manufacturing, and integration of power conversion and distribution systems for defense, governmental, and advanced industrial applications. Precision Technology USA, Inc. ("PT-USA") is a Virginia corporation with a principal place of business in Roanoke, Virginia. PT-USA is a manufacturer and supplier of industrial linear motion actuators for an extensive range of automation, mechanical, material handling, and positioning applications.

In 2005, PT-USA requested that L-3 bid on a motor controller for an Aircraft Barricade Stanchion ("motor controller" or "the product") to be placed on United States Navy ship CVN-77. PT-USA's customer was Northrop Grumman Newport News, which would in turn supply the product, along with other components, to the U.S. Navy. Jerry Needham, the Senior Contracts Administrator with L-3's Power & Control Systems Group ("PSG"), sent PT-USA a letter dated December 20, 2005, which included pricing information and other specifications for the product. This letter also stated that the proposal would be valid for a period of forty-five days and that it would be governed by L-3's PSG's standard terms and conditions of sale.

The parties exchanged a series of letters regarding the terms of the sale of the motor controller over the next several months. On March 10, 2006, PT-USA issued a purchase order for the motor controller, as well as for field support for the product. An attachment to the purchase order provides as follows:

> (1) This Purchase Order is for the procurement of Supplies and Services as proposed by L-3 Communications PSG under Technical Proposal Number 9950-1797 Rev - Dated November 8, 2005 and supplemented by L-3 Communications PSG Letter No. 0042-05-JN dated December 20, 2005 From: Jerry Needham To: Eric Sanborn; L-3 Communications PSG Letter dated March 1, 2006 (Rev 1), From: Kurt J. Schantz To: T.J. Elliott; and L-3 Communications PSG Letter dated March 6, 2006 From: Kurt J. Schantz To: T.J. Elliott. Prices quoted under L-3 Communications PSG Ltr. No. 0042-05-JN dated December 20, 2005 are in effect and applicable to this purchase order.

The purchase order also provides that PT-USA Appendix A - DoD Contracts - Conditions of Purchase Order dated January 2006 would apply to the order with certain exceptions. Paragraph 50 of PT-USA's Conditions of Purchase Order provides for potential disputes as follows:

> 59. DISPUTES (Rev. 1). The parties will attempt to settle in good faith all disputes arising under the Purchase Order. Disputes upon which the parties cannot reach an amicable settlement will be resolved under the laws of the

2

Commonwealth of Virginia without regard of the principles of conflict of law. Venue shall be the applicable state or federal court in Roanoke, Virginia. Pending final resolution of any decision, appeal, or judgment in such proceedings, or the settlement of any dispute arising under this Purchase Order, Seller shall proceed diligently with the performance of this Purchase Order. Seller shall bring any dispute arising under or related to this Purchase Order within one (1) year after the cause of action for such dispute arises.

The L-3 PSG standard terms and conditions which were referenced in the December 20, 2005 letter also include a limitations period governing disputes, which provides that "[a]ny action resulting from the breach on the part of PSG as to Product or services manufactured and/or delivered hereunder must be commenced within one year after the cause of action accrued." No limitations are placed, however, upon any action filed by PSG/PPI against its buyer in the PSG standard terms and conditions of sale.

The parties agreed that PT-USA would pay approximately $465,000 for the motor controller and approximately $78,900 for post-delivery field support. The parties later agreed to modify the payment terms from net 30 days to net 45 days in exchange for an agreement to accept a seven point milestone payment plan. PT-USA made the first three milestone payments as follows: $55,000 in April 2006; $75,000 in May 2006; and $75,000 in June 2006. PPI alleges that it completed and delivered the motor controller and provided field support as specified in the parties' agreement. The remaining milestone payments totaling approximately $260,000 were then combined and billed to PT-USA in October 2006. However, PT-USA ultimately refused to pay the final sum for the product as well as the amounts billed for field support, citing development problems with the product. PPI claims that any such problems were due to non-contractual changes made to the product's technical requirements by PT-USA as well as

3

incorrect information provided to PPI by PT-USA regarding the product's performance conditions.

On May 13, 2008, PPI filed this diversity action against PT-USA in the Eastern District of Virginia, asserting causes of action for breach of contract and unjust enrichment and asking for damages of at least $338,900, the outstanding balance it claims is due under the parties' agreement. PT-USA then filed a motion to dismiss for improper venue, claiming that venue was not proper under 28 U.S.C. § 1391 and that its purchase order provided that venue would lie in the Western District of Virginia. After considering the parties' pleadings on this issue, United States District Judge Raymond Jackson, in a Memorandum Opinion entered on October 6, 2008, denied the motion to dismiss for improper venue, but transferred the case to the Western District of Virginia sua sponte.

In his opinion, Judge Jackson found that the events that did occur in the Eastern District of Virginia were insufficient to establish venue in that district but went on to hold that the property involved in the sale was located in the Eastern District. Therefore, venue was proper in that district, pursuant to 28 U.S.C. § 1391(a)(2). Judge Jackson also found that PT-USA had continuous, systematic and substantial contacts with the Eastern District of Virginia and could anticipate defending itself there, pursuant to 28 U.S.C. § 1391(a)(1).

When turning to the forum selection argument, however, Judge Jackson held that PT-USA's purchase order controlled the terms of the parties' agreement and provided for venue only in the Roanoke Division of the Western District of Virginia. Specifically, Judge Jackson found that, because the terms of PPI's December 20, 2005 offer unambiguously stated that the offer would be valid for only 45 days, PT-USA's purchase order, issued more than 45 days later, could not serve as an acceptance of that offer. Instead, Judge Jackson held that the purchase order

4

operated as a new offer, which PPI accepted by undertaking to manufacture and ship the motor

controller. Judge Jackson went on to hold that

> Plaintiff's contention that Defendant's forum selection clause is not part of the
> contract fails because terms and conditions of Defendant's Purchase Order
> establish the parameters of the contract. As such, Defendant's choice of venue
> provision is the controlling provision in the contract. Plaintiff's argument
> attempting to incorporate its terms and conditions from its Supplemental Proposal
> fails.

Power Paragon, Inc. v. Precision Tech., Inc., No. 2:08CV00222, slip op. at 11 (E.D. Va. Oct. 6,

2008). Judge Jackson then found that transfer, rather than dismissal, was appropriate given that

the forum selection clause in PT-USA's purchase order was valid and enforceable.

This court then stayed litigation in this district pending the resolution of the plaintiff's

motion for reconsideration which was filed in the Eastern District of Virginia and which

challenged Judge Jackson's finding that the conditions attached to PT-USA's purchase order,

rather than the standard terms and conditions included in the L-3 PSG December 20, 2005 letter,

establish the terms of the agreement between the parties. Judge Jackson ultimately denied the

motion for reconsideration, finding that there was no proper ground upon which to reconsider his

prior ruling. Judge Jackson did note, however, that

> Plaintiff has transformed the Court's statements that the "terms and conditions of
> Defendant's Purchase Order establish the parameters of the contract" and
> "Plaintiff's argument attempting to incorporate its terms and conditions from its
> Supplemental Proposal fails" into a holding that *none of PPI's terms and
> conditions are part of the Contract*. The Court finds Plaintiff's strained
> interpretation of its opinion to be erroneous and concludes that Plaintiff has
> misstated the words and misconstrued the holding of the Court's opinion.

5

See Power Paragon, Inc. v. Precision Tech., Inc., No. 2:08CV00222, slip op. at 2 (E.D. Va. Dec. 18, 2008) (emphasis in original). This court has now lifted the stay, allowing litigation in this district to proceed.

Along with its answer, PT-USA also filed a counterclaim against PPI. In this counterclaim, PT-USA alleges that the purchase order was the contract between the parties, that it called for delivery within five months, and that it specified no field support would be undertaken without PT-USA's prior approval. PT-USA claims that it suspended milestone payments when L-3 missed the scheduled delivery date and PT-USA learned of problems with the motor controller during testing. Nevertheless, PT-USA claims that it afforded L-3 the opportunity to cure the problems. Additional testing was performed during September of 2006; however, the product failed, in the presence of Northrop Grumman Newport News, PT-USA's customer, and a representative from the United States Navy, Northrop Grumman's customer. PT-USA claims that it never accepted the motor controller as a result of these problems, informing L-3 in a letter dated April 5, 2007 that it would not make any further payments until they were resolved. PT-USA claims that Northrop Grumman revoked part of its contract for the electronics for another Navy ship, which would have totaled approximately $6,000,000; paid more slowly on its present contract; and revoked a portion of a contract for replacement parts which would have totaled $500,000. PT-USA also claims that it incurred $456,780.82 in its own costs related to its attempts to resolve the issues with the motor controller. L-3/PPI allegedly refused to pay these costs or to participate in further testing until its outstanding invoices were paid. As of May 30, 2008, the motor controller was shipped to the Newport News naval shipyard for placement on the U.S. Navy ship CVN-77, still only partially functional. In the counterclaim,

6

PT-USA asserts causes of action for breach of contract and breach of express warranties, claiming damages in the amount of the total paid under the purchase order, as well as incidental and consequential damages.

PT-USA has now filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6) and (c), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56. In its motion to dismiss, PT-USA, relying upon the conditions set forth in the attachment to the purchase order, contends that PPI's claims are barred by the one year limitations period set forth in the agreement, that PPI's claim for unjust enrichment is barred by the existence of an express contract, that PPI failed to plead that PT-USA actually authorized any field support as required by the purchase order, and that PPI failed to plead that it accepted an assignment of the purchase order from L-3 or has any other legal basis for bringing the instant action in its own name. PT-USA has also filed a motion for default and a motion for default judgment as a result of PPI's filing of its answer to the defendant's counterclaim one day late. PPI has filed a motion to set aside default. The parties having come before the court to present argument on all of these pending motions, they are now ripe for review.

## DISCUSSION

### I. Motions for Default, for Default Judgment, and to Set Aside Default

In the court's December 23, 2008 order lifting the stay and establishing filing deadlines, the court required the plaintiff to file its answer to the defendant's counterclaim, as well as its response to the defendant's motion to dismiss, by Friday, January 9, 2009. PPI did file its answer to the motion to dismiss on that date, but failed to timely file its answer to the counterclaim. As a result, at 10:40 p.m. on Sunday, January 11, 2009, PT-USA filed a motion for entry of default

7

as to its counterclaim, pursuant to Federal Rule of Civil Procedure 55(b)(2). This motion was followed by PT-USA's motion for default judgment as to its counterclaim at 3:29 a.m. on Monday, January 12, 2009, the next business day following the deadline imposed by the court. PPI then filed its answer at 9:43 a.m. on January 12, 2009, and filed a motion to set aside default on that same day.

Federal Rule of Civil Procedure 55(a) requires the clerk to enter default if a party against whom a judgment is sought has failed to plead or otherwise defend. After this entry of default, the party seeking judgment must apply to the court for a default judgment. Fed. R. Civ. P. 55(b)(2). The court may, however, set aside an entry of default for good cause, upon the opposing party's motion. Fed. R. Civ. P. 55(c). When deciding whether to set aside an entry of default, a court should consider the following factors: (1) whether the moving party has a meritorious defense; (2) whether it acts with reasonable promptness; (3) the personal responsibility of the defaulting party; (4) the prejudice to the party; (5) whether there is a history of dilatory action; and (6) the availability of sanctions less drastic. Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 204-05 (4th Cir. 2006). In this case, the clerk has not yet entered default with regard to the defendant's counterclaim. The court may nevertheless consider the plaintiff's opposition to the motion for default and motion for default judgment. See Meehan v. Snow, 652 F.2d 274, 276 (2nd Cir. 1981).

PT-USA contends that PPI, without excuse, missed the deadline for filing its response to the defendant's counterclaim. The defendant also notes that the deadline set by the court was the one initially requested by PPI itself. In addition, PT-USA requests that the court require PPI to pay its reasonable attorneys' fees and costs associated with the filing of its motion. See Burton v.

8

The TJX Cos., Inc., 2008 WL 1944033, at * 5 (E.D. Va. 2008) (holding that "[l]ess drastic sanctions include making a defendant pay for all of a plaintiff's expenses incurred by the defendant's delay, including the attorneys' fees associated with attempting to secure the default judgment"). In this case, PT-USA contends that attorneys' fees are warranted because it reasonably expected PPI's response to be timely, that PPI failed to contact counsel for PT-USA when it knew it would be late, and that PPI filed its answer only in response to the defendant's motions.

PPI responds that its answer to the defendant's counterclaim was inadvertently filed one day late after it became preoccupied with filing its lengthy reply to PT-USA's motion to dismiss, which was not finalized until the due date. The plaintiff notes that it acted promptly to cure its default by filing the response, which had already been prepared and signed by the deadline set by the court, on the morning of the next business day. PPI also argues that it has a meritorious defense based upon its interpretation of the relevant contract documents in this case and that it has not been dilatory in its previous filings with this court. According to the plaintiff, PT-USA has not been prejudiced by this delay of only a few hours, nor has PT-USA alleged that it has been prejudiced in any way. With regard to a potential award of attorneys' fees, PPI asserts that such an award is unwarranted in this case because the defendant was aware that PPI intended to oppose the counterclaim and nevertheless chose to file the motion for default over the weekend following the Friday deadline without having the courtesy to contact counsel for PPI regarding the delay.

The court finds that an entry of default judgment is not warranted for the filing of PPI's answer to the defendant's counterclaim one day late. PT-USA has not and cannot claim that it

9

has been prejudiced in any way by a delay of mere hours in the filing of the plaintiff's answer. PPI has no history of dilatory action before this court and moved quickly to rectify the situation once it realized it had not filed its answer by the deadline imposed by the court. Furthermore, the United States Court of Appeals for the Fourth Circuit has stated that "when a party is blameless and the attorney is at fault, the court's interest in reaching the merits controls and a default judgment should ordinarily be set aside." Heyman v. M.L. Marketing Co., 116 F.3d 91, 94 (4th Cir. 1997) (quoting August Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 811 (4th Cir. 1988)). In this case, PPI's attorney freely admits that he, rather than his client, was at fault in any delay in filing the plaintiff's answer to the counterclaim. As a result, the court will deny the defendant's motions for default and for default judgment.

Nevertheless, the plaintiff did fail to comply with the deadline set by the court at its own request, even if that delay was very brief. The defendant's motions for default and for default judgment were not frivolous under the circumstances. Therefore, the court finds that it is appropriate for counsel for PPI to pay PT-USA's reasonable costs relating to the filing of these motions and will enter an order to that effect at the appropriate time.

## II.     Motion to Dismiss, or in the Alternative, for Summary Judgment

### A.     Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim upon the motion of the defendant for failure to state a claim upon which relief may be granted. When considering a motion to dismiss pursuant to Rule 12(b)(6), the court "should accept as true all well-pleaded allegations" and should construe those allegations in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). As the Supreme Court

10

recently noted, a complaint need not assert detailed factual allegations, but must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964-65 (2007). Furthermore, even assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." 127 S. Ct. at 1965.

Under Federal Rule of Civil Procedure 12(c), the party moving for judgment on the pleadings "must demonstrate that there are no disputed material facts and that judgment should be entered as a matter of law." U.S. Fidelity and Guar. Co. v. Tierney Assoc., Inc., 213 F. Supp. 2d 468, 470 (M.D. Pa. 2002). Furthermore, the court "must accept all factual averments as true and draw all reasonable inferences in favor of the non-moving party." Id.

Both the plaintiff and the defendant have attached documents, including invoices and letters, to their pleadings regarding the defendant's motion. Federal Rule of Civil Procedure 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Furthermore, "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The court finds, however, that the relevant documents submitted by the parties are sufficiently referenced in the complaint so as not to require the conversion of this motion to one for summary judgment. Therefore, the court will treat the motion as one to dismiss, pursuant to Rules 12(b)(6) and (c).

**B.  Proper Application of the One Year Limitations Period Contained Within the Terms and Conditions of PT-USA's Purchase Order**

1.  The Terms and Conditions Governing the Parties' Agreement

11

As previously stated, the conditions included as part of PT-USA's purchase order for the motor controller include a requirement that the "Seller shall bring any dispute arising under or related to this Purchase Order within one (1) year after the cause of action for such dispute accrues." Virginia law provides that a party must bring an action for breach of a contract for sale within four years after the cause of action has accrued. Va. Code § 8.2-725(1). Nevertheless, "[b]y the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it." Id. In this case, PT-USA's purchase order purports to reduce the limitation period to one year. Such shorter limitation periods are generally upheld so long as they are not against public policy and not unreasonably short. See Board of Sup'rs of Fairfax County v. Sentry Ins., 239 Va. 622, 625-26 (1990). As there is no allegation here that the one year limitations period contained within the conditions to PT-USA's purchase order was either against public policy or unreasonably short, the defendant asserts that this one year limitation period should govern the instant dispute.

PPI responds that it never intended to agree to limit its rights to bring suit within a one year limitations period and that this provision of PT-USA's purchase order is not part of the parties' agreement by operation of law. In his October 6, 2008 order, Judge Jackson found that the "terms and conditions of Defendant's Purchase Order establish the parameters of the contract." PPI contends, however, that this ruling should not control the interpretation of the agreement between the parties in this case because Judge Jackson committed legal error and his ruling was outside the subject of the motion before that Court which was solely whether venue was proper.

12

PPI does not now argue that the offer contained in its December 20, 2005 letter remained valid at the time PT-USA issued its purchase order. Instead, PPI maintains that PT-USA's purchase order was a new offer, or a counteroffer, which specifically incorporated PPI's December 20, 2005 letter by reference, including PPI's standard terms and conditions of sale, and which PPI accepted by performing under the agreement. PPI contends that Judge Jackson erred by deciding that PT-USA's conditions alone applied to the agreement between the parties because he failed to give meaning to all the contract terms, failed to properly address the issue of incorporation by reference, and failed to give weight to the performance of the parties. Therefore, the plaintiff asks the court to interpret the agreement between the parties de novo.

Although Judge Jackson's rulings are now considered the law of the case, the law of the case doctrine does not necessarily require this court to automatically follow a holding of the transferor Court if the court believes that such holding is clearly erroneous or would work a manifest injustice or if there is new evidence before the court or a change in controlling law. See Arizona v. California, 460 U.S. 605, 618 n. 8 (1983) (holding that, under the law of the case doctrine, "it is not improper for a court to depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice"); Hill v. BASF Wyandotte Corp., 696 F.2d 287, 290 n. 3 (4th Cir. 1982) (finding that "it bears observing that whether rulings by one district judge become binding as 'law of the case' upon subsequent district judges is not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances. It may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not."); Peterson v. Lindner, 765 F.2d 698, 704 (7th Cir. 1985) ("while a district judge should carefully consider the propriety of re-examining a prior ruling of another district judge in

13

the same case, when good reasons for doing so appear (such as new evidence or controlling law, or clear error), the 'law of the case' doctrine must yield to rational decisionmaking").

PPI now argues that Judge Jackson's holding that the terms included in PT-USA's purchase order alone control the agreement between the parties is clearly erroneous. However, the court finds that PPI's argument mischaracterizes Judge Jackson's rulings in light of his later order entered in response to PPI's motion for reconsideration. It is true that Judge Jackson's earlier order, in regard to the proper venue for the action, stated that the terms and conditions from PT-USA's purchase order would "establish the parameters of the contract." Nevertheless, Judge Jackson clarified this holding in his December 18, 2008 order denying the plaintiff's motion for reconsideration. In that later order, Judge Jackson clearly stated that PPI was incorrect in interpreting his earlier ruling to mean that "none of PPI's terms and conditions are part of the Contract." Judge Jackson did not elaborate on which of PPI's terms and conditions might apply, however, as he was limiting his holding to the issue of proper venue rather than to one of global contract interpretation.

The court agrees with Judge Jackson that PT-USA's purchase order governs the agreement between the parties in this case. Even PPI now admits that its December 20, 2005 offer was no longer outstanding at the time PT-USA's purchase order was issued and that the purchase order represents a new offer that PPI then accepted. Nevertheless, the court agrees that the doctrine of incorporation by reference should apply in this case to include in the parties' agreement at least those terms and conditions attached to PPI's December 20, 2005 letter that are not in conflict with the terms in PT-USA's purchase order.

2.    The Applicability of the Doctrine of Incorporation by Reference

14

Virginia courts have recognized that parties may incorporate extrinsic documents into their agreement. See VNB Mortgage Corp. v. Lone Star Indus., Inc., 215 Va. 366, 369 (1974). The doctrine of incorporation by reference will apply when the primary document explicitly identifies the secondary document to be incorporated. Hertz Corp. v. Zurich American Ins. Co., 496 F. Supp. 2d 668, 675 (E.D. Va. 2007). See also, Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3rd Cir. 2003) (holding that "[i]ncorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship"). In this case, PPI argues that the standard terms and conditions of sale attached to its December 20, 2005 letter, as well as the terms of the letter itself, were expressly incorporated into PT-USA's purchase order and became part of the parties' agreement.

The PT-USA purchase order specifically stated that it was for the procurement of supplies and services "as proposed by L-3 Communications PSG under Technical Proposal Number 9950-1797 Rev - Dated November 8, 2005 and supplemented by L-3 Communications PSG Letter No. 0042-05-JN dated December 20, 2005 From: Jerry Needham To: Eric Sanborn . . . ." The purchase order also stated that the "[p]rices quoted under L-3 Communications PSG Ltr. No. 0042-05-JN dated December 20, 2005 are in effect and applicable to this purchase order." PPI contends that this language acts to incorporate into the parties' agreement PPI's standard terms and conditions that were attached to and referenced by the December 20, 2005 letter. PPI argues that the language in PT-USA's purchase order is plain and unambiguous and that the only way to give effect to the plain meaning of this language is to recognize that the terms and conditions contained within the December 20, 2005 letter must have some effect. In a sense, because it

asserts that there is no one document that evidences all of the terms of the agreement, PPI argues that PPI's documents and PT-USA's documents were essentially "stapled together" to create the entire agreement between the two.

PT-USA acknowledges that its purchase order refers to the December 20, 2005 letter from PPI. However, the defendant maintains that the language of the purchase order includes no explicit reference to PPI's standard terms and conditions of sale. PT-USA points out that its purchase order states that its own conditions apply to the order with certain exceptions. By contrast, the language regarding the December 20, 2005 letter states only that the order was for the purchase of the product "as proposed by L-3 Communications PSG under Technical Proposal Number 9950-1797 Rev - Dated November 8, 2005 and *supplemented by* L-3 Communications PSG Letter No. 0042-05-JN dated December 20, 2005 From: Jerry Needham To: Eric Sanborn." (Emphasis added). PT-USA argues that the word "supplemented by" indicates its intention to rely only upon its own conditions of the order. PT-USA also notes that the December 20, 2005 letter indicates that the terms and conditions are a separate document, not part of the letter itself, and that the letter alone is referenced in the defendant's purchase order. Therefore, PT-USA concludes that there is no clear reference to PPI's standard terms and conditions of sale in its purchase order nor is there a description of that document which would warrant incorporating it by reference.

The court concludes that the unambiguous language of PT-USA's purchase order does evidence an intent to incorporate the December 20, 2005 letter. That letter supplemented the original proposal from the plaintiff, both by specifying pricing and field support assumptions and by itself specifically incorporating the PSG standard terms and conditions into the offer. PT-

16

USA's purchase order need not have specifically referred to the terms and conditions themselves because, by incorporating the letter, PT-USA also specifically incorporated the terms and conditions provided for therein. As a result, the court finds that the doctrine of incorporation by reference operates in this case to include the PSG standard terms and conditions into the agreement between the parties. This result is not inconsistent with Judge Jackson's rulings because he specifically indicated that, while PT-USA's purchase order governed the parties' agreement generally, he never intended to imply that none of the PSG terms and conditions were part of the agreement.

3.    The Appropriate Limitations Period Governing the Instant Dispute

Of course, the court's application of the doctrine of incorporation by reference to the contract between the parties does not necessarily end the inquiry into the proper limitations period that should apply to PPI's claims. PPI contends that the provisions of the Uniform Commercial Code ("UCC") should apply to the transaction because the subject of the agreement is the sale of goods. Specifically, the plaintiff points to Va. Code § 8.2-207 which provides as follows:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>     (a) the offer expressly limits acceptance to the terms of the offer;
>     (b) they materially alter it; or
>     (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

17

Courts interpreting these provisions in the UCC have applied a "knockout rule" to "knock out" any conflicting terms in forms such that the conflicting terms do not become part of the parties' agreement. See, e.g., Ionics, Inc. v. Elmwood Sensors, Inc., 110 F.3d 184, 189 (1st Cir. 1997) (holding that "consistent with section 2-207 and Official Comment 6, that where the terms in two forms are contradictory, each party is assumed to object to the other party's conflicting clause []. Nor do such terms become part of the contract under subsection (2) because notification of objection has been given by the conflicting forms."); Daitom, Inc. v. Pennwalt Corp., 741 F.2d 1569, 1579 (10th Cir. 1984) (noting that, under the "knock-out rule," conflicting terms will cancel one another out and that the ultimate contract will include only non-conflicting terms and any others supplied by the U.C.C.).

PPI admits that the facts of the instant case are not those typical for an application of the UCC "knock out" rule because its own offer was no longer outstanding when PT-USA issued its purchase order. Nevertheless, the plaintiff argues that the logic of that rule should still apply because PT-USA's purchase order specifically incorporated the conditions in PPI's original offer, some of which conflict with those in PT-USA's new offer through its purchase order. PPI contends that paragraph 59 of PT-USA's purchase order, entitled "Disputes," is in direct conflict with paragraph 17 of the PSG standard terms and conditions of sale, entitled "Arbitration." The PSG terms and conditions require arbitration, in the event of a dispute, in the State of California, whereas the corresponding paragraph in the PT-USA conditions requires resolution of disputes under Virginia law in the applicable state or federal court in Virginia. This same paragraph also includes the one year limitations period for any claims brought by the seller. PPI contends that these provisions are in irreconcilable conflict and that the court should "knock out" both

18

provisions, thus making the four year limitations period from the UCC applicable to this case. See Va. Code § 8.2-725. Although PPI acknowledges that its own conditions with regard to the limitations period are contained within a separate paragraph from that governing the resolution of disputes, it argues that the court should not attempt to rewrite the contract by striking only some sentences from paragraph 59 of PT-USA's purchase order and leaving intact only the sentence regarding the one year limitations period.

PT-USA responds that § 8.2-207 does not apply to the facts of this case because PT-USA's purchase order did not serve as an acceptance of PPI's offer which had expired. Therefore, according to PT-USA, the "knock out" rule should have no effect in this case. PT-USA also contends that Judge Jackson has ruled that PT-USA's terms and conditions alone, not those of PPI, apply to the transaction between the parties.

As previously set forth, the court disagrees with the defendant's characterization of Judge Jackson's ruling with regard to the terms and conditions that are included in the parties' agreement. Nevertheless, the court finds that § 8.2-207 does not govern the reconciliation of potentially conflicting terms in this case. That section, and the corresponding "knock out" rule, apply only when a party accepts an offer "even though it states terms in addition to or different from those offered." Va. Code § 8.2-207(1). In this case, the offer was PT-USA's purchase order which was accepted by the plaintiff through its performance. No additional or different terms were included in the plaintiff's acceptance. Instead, the agreement was as stated in the purchase order, incorporating by reference the PSG standard terms and conditions through the December 20, 2005 letter.

Even though the specific UCC provision and "knock out" rule referenced by the plaintiff may not apply in this case, the Virginia Supreme Court has nevertheless spoken to such a situation where certain terms of the parties' agreement are in conflict. In <u>Ames v. American Nat. Bank of Portsmouth,</u> 163 Va. 1, 39 (1934), the Court held that no word or clause of a contract "should be discarded unless the other words used are so specific and clear in contrary meaning as to convincingly show it to be a false demonstration." Instead, a court should harmonize conflicting provisions of a contract if it can do so, without discarding either, in order to "effectuate the intention of the parties as expressed in the contract considered as a whole." <u>Id.</u>

In turning to the agreement at issue in this case, the court does not find it difficult to harmonize the various paragraphs in the parties' respective terms and conditions with regard to the applicable limitations period. Although there is clearly a conflict as to the proper venue for a claim brought under the contract, there is no inherent dispute in the language regarding the limitations periods for actions brought by either the seller, as stated PT-USA's purchase order, or the buyer, as stated in the PSG standard terms and conditions. Instead, these two provisions can easily stand side by side. The conditions attached to PT-USA's purchase order state that the seller should bring any claim under the agreement within one year after the cause of action for such a dispute arises. Likewise, the PSG standard terms and conditions require the buyer to bring any claim against the seller within one year after such a cause of action has accrued. Each set of conditions is silent with regard to an action brought by the opposite party. Therefore, the court may give effect to both of the provisions and will apply the one year statute of limitations period to the plaintiff's claims.

In such an action for breach of contract, the cause of action will accrue when the breach of contract occurs and not when the resulting damage is discovered. Va. Code § 8.01-230. PT-USA argues that PPI's claims for nonpayment of its October 2006 invoice accrued no later than 45 days after the issuance of that invoice, when PT-USA failed to pay the invoice in accordance with the net 45 terms agreed to by the parties. Because the instant action was not filed until May 14, 2008, approximately one and a half years later, PT-USA contends that any claims for nonpayment of the October 2006 invoice are barred by the one year limitation period.

The court notes, however, that PPI submitted a final invoice for field support, which also included a charge for the outstanding balance of payments for the motor controller, on March 15, 2007. Furthermore, in a letter dated April 5, 2007 to L-3's Power & Control Systems Group, PT-USA's Contracts Manager detailed the problems PT-USA was experiencing with the motor controller and stated the following:

> In conclusion, PT-USA cannot, in good faith, pay further on the Reference A purchase order until, at the very least, we resolve/fix the many problems that are being encountered with the Motor Controller. In addition, the substantial delays and apparent inability of L-3 to support its product has caused PT-USA to suffer considerable disruption to its program including a substantial alteration in expected cash receipts and a significant deterioration in our reputation with our customer and with the Navy. When these problems are resolved/fixed, then we will provide L-3 a proposal for costs we have incurred due to L-3's not honoring the purchase order. PT-USA is very disappointed with L-3's performance on the reference purchase order and would recommend that L-3 make every effort to minimize further costs being incurred by PT-USA in resolving issues with the Motor Controller.

The court finds that it was not until PT-USA wrote this April 5, 2007 letter that an action for breach of contract accrued. Although PT-USA failed to make payment on the October 2006 invoice, only the April 2007 letter makes apparent that PT-USA was refusing to make the final

Case 7:08-cv-00542-GEC   Document 49   Filed 03/17/09   Page 21 of 31   Pageid#: 715

payment for the motor controller, at least at that time. Even considering April 5, 2007 as the date of breach, however, PPI's complaint filed on May 13, 2008 would still be deemed untimely, in the absence of any other considerations, because it was filed more than one year after the cause of action for breach of contract accrued.

## C.    Tolling of the One Year Limitations Period Through Equitable Estoppel

The plaintiff next asserts that, given that the court has found that the one year limitations period does apply, PT-USA should nevertheless be equitably estopped from asserting that it bars the plaintiff's claims, relying primarily upon Barry v. Donnelly, 781 F.2d 1040 (4th Cir. 1986) and City of Bedford v. The James Leffel & Co., 558 F.2d 216 (4th Cir. 1977). In Barry, the Court explained the principles of equitable estoppel in the context of a claim that would otherwise be time barred as follows:

> estoppel occurs where the aggrieved party reasonably relied on the words and conduct of the person to be estopped in allowing the limitations period to expire. As applied to the statute of limitations, the central premise is that one cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statue of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.

Barry, supra, 781 F.2d at 1042 (citing City of Bedford, supra, 558 F.2d at 218). No deceit is required; instead, in the absence of a showing of fraud or deception, the party asserting equitable estoppel must show only "a representation, reliance, change of position, and detriment." Id. at 1042-43.

The plaintiff in Barry brought a declaratory action to resolve questions of ownership regarding a painting and, among other grounds, asserted a limitations bar to any action by the defendant for recovery of property. Id. at 1041. The defendant argued, however, that the

22

plaintiff, after the parties had exchanged correspondence regarding the ownership of the painting, reaffirmed a promise to give the painting to the defendant's son, and that the defendant was not aware the plaintiff no longer intended to make such a gift until several years later. Id. The Court held that questions of fact remained with regard to whether the plaintiff had indeed reaffirmed her earlier promise and whether the defendants reasonably relied on that promise to their detriment in failing to sue within the limitations period. Id. at 1043. Therefore, the Court found that summary judgment on the issue of equitable estoppel was inappropriate. Id.

In City of Bedford, supra, the defendant sold the City a replacement generator turbine in 1969. 558 F.2d at 217. After it was placed in service, however, the turbine failed to perform properly. Id. From that time until a period almost five years later, the seller continued to recommend and assist with repair efforts. Id. The seller also made numerous written statements in which it stated it hoped to work out the problems and believed the parties were exhibiting mutual consideration and forebearance. Id. at 218-19. Ultimately, the City initiated suit in 1974, five years after the initial sale, and the district court found that the action was barred by the four year limitations period for a breach of contract for the sale of goods. Id. at 217. The United States Court of Appeals for the Fourth Circuit reversed, holding that "it seems clear that the principle of estoppel may be applicable where a vendor claims that defects in non-complying goods can be corrected and attempts to do so." Id. at 218. The Court noted that this was a logical result "because such conduct may lead the injured party to reasonably believe that it will receive satisfaction without resort to litigation." Id. Ultimately, the Court found that the seller's statements implied that it would discover and remedy the problems with the turbine and that the

seller could not then complain "if plaintiff, relying on such statements, delayed the commencement of litigation for a reasonable time to allow it to do so." Id. at 219.

PPI contends that PT-USA's representations in the instant matter were similar to those made by the plaintiff in Barry and by the seller in City of Bedford. Specifically, the plaintiff maintains that the defendant's statements induced PPI to continue to negotiate with PT-USA and to attempt to remedy the problems identified by the defendant, even after PT-USA failed to make payment on the final invoice for the product and field support, with the expectation that PPI would then receive full payment in accordance with the agreement.[1] PPI contends that the April 2007 letter is not properly characterized as a refusal to pay but rather as an invitation to PPI to remedy the identified problems. PPI maintains that it relied upon these representations and continued working with PT-USA throughout 2007 and into 2008 in an attempt to resolve the dispute, until finally filing this action in May of 2008. At the very least, PPI argues, the factual issues surrounding the elements of equitable estoppel in this case would justify denying the defendant's motion to dismiss on this ground and allowing the matter to proceed further.

PT-USA, on the other hand, attempts to distinguish Barry, arguing that the plaintiff in Barry allegedly made an unconditional promise to give the painting to the defendant's son, whereas the allegation in the instant case is that PT-USA made only a conditional promise to pay the outstanding invoices if PPI was able to fix the problems with the motor controller. PT-USA also maintains that the assertion of equitable estoppel in City of Bedford was against the seller of a product, rather than the buyer as in the instant case. Furthermore, the delay in City of Bedford

---

[1] PPI continues to argue, however, that any problems with the motor controller were the result of changes made by defendant to its specifications and alterations made to the product after delivery, rather than any act or omission on the part of the plaintiff.

Case 7:08-cv-00542-GEC    Document 49    Filed 03/17/09    Page 24 of 31    Pageid#: 718

was allegedly caused by the party to be estopped, whereas here the delay was caused by the same party attempting to raise the doctrine of equitable estoppel in order to preserve its claims.

PT-USA also points to the Fourth Circuit's holding in Roy Stone Transfer Corp. v. Budd, 796 F.2d 720 (4th Cir. 1986). In Budd, the plaintiff purchased twenty trailers from the defendant in 1976. 796 F.2d at 721. In 1977 and again in 1978, two of the trailers collapsed. Id. After the plaintiff contacted the defendant about these collapses, the defendant sent the plaintiff a letter in 1978 stating it would stand behind its product. Id. The defendant also paid the plaintiff for the costs of repair for the trailers. Id. Two more trailers collapsed in 1978 and 1979, however, and the plaintiff filed suit in 1980, more than four years after the trailers' purchase. Id. The plaintiff conceded that the four year limitations period had expired, but asserted that the defendant should be equitably estopped from raising this defense because plaintiff had relied upon the defendant's 1978 letter in failing to pursue its suit earlier. Id. The Court rejected this argument, noting that the letter in Budd was not an unconditional promise to repair the trailers as in City of Bedford, but was instead "a general statement that the Budd Company would stand behind its products." Id. The Court also noted that there was no evidence that the plaintiff had actually relied upon this letter to its detriment as the letter was written more than two years before the statute of limitations had expired. Id. at 722.

PT-USA contends that its statements and actions are more akin to those in Budd than to those in City of Bedford because it did not make an unconditional promise to pay the invoices, but merely notified PPI that it would not pay until "at the very least" PPI had resolved the problems with the motor controller. PT-USA also asserts that PPI cannot show that it was misled or reasonably relied upon the defendant's conditional statement in the April 2007 letter. Instead,

25

the defendant maintains that PPI had more than seven months after receiving the April 2007 letter in which to bring suit. See also, Luddeke v. Amana Refrigeration, Inc., 239 Va. 203, 208 (1990) (finding that the defendant's representations that it was working to take care of the problem and would very likely replace the product were not sufficient to justify the application of doctrine of equitable estoppel). In addition, PT-USA notes that it was obligated by the terms of the agreement to attempt to settle in good faith any dispute.

The court believes that PT-USA's attempts to distinguish Barry and especially City of Bedford are without merit under the facts of this case. When considering the language of the April 2007 letter from PT-USA, coupled with the parties' ongoing attempts to resolve any problems with the motor controller after that letter was sent and received, the court finds and concludes that the plaintiff has forecast evidence sufficient to support the application of the doctrine of equitable estoppel in this case. While it is true that the promise in Barry was unconditional, as PT-USA argues, the court does not agree that the language of the April 2007 letter can be construed as only a conditional promise to pay. The relevant portion of the letter is as follows: "In conclusion, PT-USA cannot, in good faith, pay further on the Reference A purchase order *until, at the very least, we resolve/fix the many problems that are being encountered with the Motor Controller*." (Emphasis added). The court believes that PPI could have understood that this language did imply that PT-USA would make payment on PPI's final invoice for the product if the problems with the motor controller were corrected. PT-USA's statements were not simply general observations regarding future payment akin to the vague comments made in Budd, supra, but were specific to the problems the defendant was experiencing as well as PPI's desire to receive payment in full on its final invoice. Perhaps more

26

importantly, in its counterclaim, PT-USA admits that PPI did continue to work on the problems identified after the defendant sent the letter in April 2007, and that PT-USA understood that PPI was doing so. The court also notes that it does not find any merit in defendant's argument that City of Bedford should not apply to the instant action because the party asserting equitable estoppel in that case was the buyer rather than the seller. If a party is able to prove the elements of equitable estoppel to toll a limitations period, it is irrelevant which side of the transaction that party is on.

It is true, however, that the April 2007 letter's implication may not be quite as strong as the alleged promise made in Barry. The court also notes that, as this case proceeds, the plaintiff will be required to more fully document the facts it now suggests support its claim that it did rely upon the statements and actions of the defendant in forbearing to file suit until after the one year deadline has passed. For purposes of this motion to dismiss, however, the plaintiff's allegations, accepted as true, are sufficient to support the application of the doctrine of equitable estoppel to toll the one year limitations period for the plaintiff's breach of contract claims, at least with regard to payment for the motor controller.

With regard to PPI's claim for nonpayment of field support, however, the court finds that the representations made by PT-USA in the April 2007 letter were not sufficient to warrant the application of equitable estoppel to toll the one year limitations period. In paragraph 4 of that letter, PT-USA addresses the issue of field support as follows:

> The subject letter states that PT-USA is past due on invoices for purchase order Items 2, 3, and 4. PT-USA has not approved any effort under these Items from L-3; therefore, they should not be included in any invoice for effort under the subject purchase order. These purchase order Items were for Field Support of System Integration, Field Support to Upgrade Qual Unit and Field Support for

27

Qualification respectfully. All efforts have been in an attempt to fix the equipment so that Qualification can begin. I understand L-3 is now in agreement with this comment and have [sic] withdrawn its invoices for these line items. Clearly field support cannot commence until final acceptance has been achieved which is not the case.

The parties have presented opposing views with regard to whether any field support provided by PPI was approved in advance by PT-USA so as to warrant payment under the agreement.[2] Based upon the language in the April 2007 letter cited above, however, the court finds that this argument is moot because the statements made by PT-USA in the letter cannot reasonably be construed to indicate that it intended to pay for any field support provided up to that point in time, regardless of whether it was or was not approved by the defendant. Instead, the letter clearly indicates that PT-USA had no intention of paying for the field support which had been invoiced by PPI. Because the letter provides no basis upon which to apply the doctrine of equitable estoppel in order to toll the applicable one year limitations period as to the field support invoices, the court finds that PPI's claims for unpaid field support are time barred. Therefore, the defendant's motion to dismiss will be granted with regard to the nonpayment of the field support invoices.

## D.  PPI's Basis for Bringing a Claim in Its Own Name

PT-USA next contends that PPI cannot bring this action in the first instance because the agreement was made between itself and L-3 Communications Corporation, not PPI, and that PPI has alleged no basis upon which it may enforce the agreement in its own name. In the alternative, PT-USA contends that L-3 must be substituted as a party in accordance with Federal

---

[2]  As previously noted, the purchase order specifies that "[n]o effort is to be expended by L-3 PSG on Purchase Order Item No.'s 2, 3, or 4 without prior approval by PT-USA."

28

Rules of Civil Procedure 17 and 25.[3] PT-USA notes that the contract identifies the seller as L-3 Communications, Power & Control Systems Groups and that PPI's name appears only on the invoices sent for the motor controller and field support.

PPI responds that the Power Systems Group is actually a division of PPI. The plaintiff's website states that L-3 Communications Power Systems Group is the combination of Power Systems Group and Airborne Power. See http://www.powerparagon.com/ comp_content_psg.html (last visited January 31, 2009). The website further states that Power Paragon, Inc. joined Power & Control Systems Group in 1997 and that Power & Control Systems Group was acquired by L-3 Communications in 1998. Id. Thus, PPI is a wholly-owned subsidiary of L-3 Communications Corp and part of the Power & Control Systems Group. The plaintiff also maintains that PPI's Power Systems Group division performed the work under the contract, as PT-USA was aware.

The court notes that the December 20, 2005 letter is on the letterhead of L-3 Communications Power & Control Systems Group, and the purchase order from PT-USA is directed to L3 Communications, Power & Control Systems Group. The March 2007 invoice is also from L-3 Communications, Power & Control Systems Group, Power Paragon but directs payment to Power Paragon, Inc. The court understands that PPI may have actually performed the work under the contract and that PPI is part of a relatively complex corporate structure. Regardless, L-3 also appears to have been a party to the agreement, and the defendant understood that it was dealing with L-3, even if it also knew PPI was involved. As a result, the court finds

---

[3] Under Rule 17, an action may not be dismissed for failure bring the action in the name of the real party in interest until the real party in interest has had the opportunity to be ratified, joined, or substituted into the action. Fed. R. Civ. P. 17(a)(3). Rule 25 allows for the substitution of parties under certain circumstances.

Case 7:08-cv-00542-GEC    Document 49    Filed 03/17/09    Page 29 of 31    Pageid#: 723

that it cannot accord complete relief among the parties to the contract at issue in this case without the presence of L-3 in this action. Therefore, while the case will not be dismissed upon this basis, the court finds that L-3 must be joined as a necessary party, pursuant to Federal Rules of Civil Procedure 17(a)(3) and 19(a)(1).

## E.    PPI's Claim for Unjust Enrichment

PT-USA contends that PPI may not maintain an action for unjust enrichment because it has also pled the existence of an express contract between the parties. The well settled rule in Virginia is that a party may not recover in quantum meruit against another party with whom the claimant has an express contract on the same matter or subject in question. Raymond, Colesar, Glaspy & Huss, P.C. v. Allied Capital Corp., 961 F.2d 489, 491 (4th Cir. 1992). See also, Vollmar v. CSX Transportation, Inc., 705 F. Supp. 1154, 1176 (E.D. Va. 1989) ("Unjust enrichment claims can arise only where, unlike here, there is no express contract, whether written, oral or both. . . . '[T]here can be no recovery in quantum meruit where a valid express contract between the parties exists. Parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms.'") (quoting In re Stevenson Assoc., 777 F.2d 415, 421-22 (8th Cir. 1985)). In this case, the plaintiff's claims stem exclusively from alleged breaches of the express agreement between the parties. As a result, the court agrees that PPI has failed to state a claim for unjust enrichment, and this claim must be dismissed.

## CONCLUSION

For the reasons previously set forth, the court will deny the defendant's motion for default and default judgment. As a result, the plaintiff's motion to set aside default judgment will be granted. In addition, the court will grant in part and deny in part the defendant's motion to

30

dismiss. Specifically, the plaintiff's causes of action for breach of contract related to the nonpayment of field support and its cause of action for unjust enrichment will be dismissed. The plaintiff's claim for breach of contract related to the nonpayment of the final invoice for the motor controller at issue in this case will be allowed to proceed.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER:     This 17th day of March, 2009.

_____
United States District Judge